UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Heather F.,[1]

    Plaintiff,

v.

Martin J. O'Malley,
*Commissioner of Social Security*,

    Defendant.

Case No. 23-cv-2644 (JRT/DJF)

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Heather F. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Because substantial evidence supports the Decision, the Court recommends Plaintiff's request for relief (ECF No. 9) be denied, Defendant's request for relief (ECF No. 16) be granted, the Decision be affirmed, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for SSI on March 11, 2021. (Soc. Sec. Admin. R. (hereinafter "R.") 72, 83.)[2] At that time she was twenty years old, with a high school education and no work experience. (R. 184, 188-189.) Plaintiff alleged she became disabled on August 4, 2020, resulting from depression, anxiety, schizoaffective disorder, Crohn's disease, irritable bowel syndrome, post-traumatic stress disorder, acid reflux, overactive bladder, and a history of urinary tract infections (R. 72, 83, 188).

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

---

[2] The Social Security administrative record (R.) is filed at ECF No. 8. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers in citing to the Administrative Record. All other citations refer to ECF docket and page numbers.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[3]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

**III.    Procedural History**

The Commissioner denied Plaintiff's application for SSI initially (R. 60-71) and on reconsideration (R. 73-82). On September 6, 2022, at Plaintiff's request (*see* R. 97), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 38-59). Plaintiff and a vocational expert testified at the hearing. (R. 39.) Plaintiff was represented by an attorney. (R. 38.) After the hearing, the ALJ considered whether Plaintiff was disabled between March 11, 2021 the date of her application, and October 28, 2022, the date of the ALJ's Decision. (R. 16-33.)

The ALJ determined that Plaintiff has: (1) non-severe gastrointestinal impairments (R. 19); and (2) multiple physical and mental impairments, which at least in combination are severe: post-traumatic stress disorder, major depressive disorder, panic disorder, personality disorder, and irritable bowel syndrome/enteritis. (R. 19.) The ALJ found that while Plaintiff has moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself, Plaintiff's mental impairments do not severely limit any area of broad functioning. (R. 19-20.) The ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing. (R. 19-20.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 20-31) and determined that Plaintiff has:

> the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember and carry out simple instructions not requiring a specific production rate, such as assembly line work. She can make simple work-related decisions, can tolerate occasional changes in a routine work setting, can occasionally interact with supervisors and coworkers, and should not work [with] the general public. She must have access to restroom facilities, so for example, cannot perform outdoor work.

(R. 20.)

Next, the ALJ found Plaintiff has no past relevant work experience (R. 31). The ALJ then evaluated whether Plaintiff can perform any job that exists in significant numbers in the national economy. (R. 32-33.) Based the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is able to perform such other jobs, including: "cleaner" (DOT #381.687-018, medium work with an SVP of 2 and approximately 250,000 jobs in the national economy); "packager" (DOT #920.587-108, medium work with an SVP of 2 and approximately 172,000 jobs in the national economy); and "store laborer" (DOT #922.687-058, medium work with an SVP of 2 and approximately 240,000 jobs in the national economy). (R. 32.) The ALJ concluded on that basis that Plaintiff is not disabled. (R. 32-33.) The Appeals Council denied Plaintiff's request for review of the ALJ's Decision (R. 1-7), and this lawsuit followed.

## DISCUSSION

### I.     Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.  Analysis

Plaintiff asserts several arguments challenging the ALJ's RFC determination. RFC is defined as the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). It is the claimant's burden to prove her functional limitations related to her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).

The ALJ in this case cited extensive evidence related to Plaintiff's treatment history, mental status examinations, daily living activities, and hearing testimony to support the ALJ's RFC determination. (*See, e.g.*, R. 21-27.) The ALJ specifically observed that Plaintiff testified she has a boyfriend who travels from three hours away to visit her. She said she visits stores with him and also visited her grandmother and the city, but they do not go to restaurants (R. 21, citing R. 47-48). The ALJ took note of Plaintiff's testimony that she interacts primarily with a gaming community online (R. 21, citing R. 53), and that although her bowel movements fluctuate, she uses the bathroom 3-7 times per day during a flare-up, which happens multiple times per week (R. 21, citing R. 50-51). While Plaintiff reported a previous hospitalization due to suicidal ideation, she confirmed she had not had auditory hallucinations since 2019 (R. 21, citing R. 51-52).

The ALJ also reviewed Plaintiff's medical records in detail, including documentation reflecting concerns that Plaintiff was refusing treatment. She noted Plaintiff had declined an antidepressant in June 2020 because Plaintiff was worried about side effects and requested an alternative medication for use only on an infrequent, as-needed basis (R. 22, citing R. 271). Plaintiff canceled a therapy appointment in July 2020 because she was feeling positive (R. 22, citing R. 328-329). In August 2020, Plaintiff became angry and yelled during an appointment with her gastroenterologist, who noted Plaintiff's mental health issues and concluded she was "resistant to any kind of treatment" (R. 22, citing R. 293-295). Plaintiff again declined antidepressant medication in August 2020 (R. 22, citing R. 302-306). In October 2020, a second gastroenterologist remarked that Plaintiff was resistant to using medications (R. 22, citing R. 299-301).

The ALJ further reviewed records showing that in November 2020, Plaintiff: (1) presented at an appointment alert, oriented, and well-groomed with appropriate hygiene and made

7

appropriate eye contact; (2) demonstrated an average to full range of affect, adequate perceptions, memory and average IQ, and expected levels of judgment, insight, and abstract thinking skills; (3) reported improvement in her depressive symptoms and denied auditory hallucinations and self-injurious or suicidal thoughts and behaviors; and (4) described a typical day as talking with her mother, watching TV, playing games on the internet, and picking up the household as needed (R. 23, citing R. 410-415). In December 2020, Plaintiff presented at a medical appointment with normal mood and affect (R. 23, citing R. 316-319). In April 2021, Plaintiff's online educator reported Plaintiff showed only slight problems interacting and caring for herself (R. 23, citing R. 212-223). In July 2021, Dr. Alford Karayusuf reported Plaintiff: (1) refused to take psychotropic medications due to side effects; (2) was not involved in psychotherapy because she wanted a therapist that would communicate through texting, and because she was concerned her constipation and diarrhea would interfere with therapy; (3) described anxiety, including panic attacks when leaving home or in the company of other people and flashbacks when she is out among people; (4) was largely oriented on a mental status exam; (5) reported no hallucinations or delusions but was sometimes distracted by worries that people wanted to hurt her; (6) showed mild to moderate psychomotor agitation and came across as younger than her actual age; and (7) demonstrated moderate tension and subdued facies, but good eye contact, appropriate affect, and coherent, relevant, non-pressured speech (R. 24, citing R. 355-359). In December 2021, Plaintiff: (1) reported to her primary care provider she had not left home for two years; (2) said she was considering working with an online therapist; and (3) appeared well and was smiling and interactive with her provider, with minimal anxiety; but (4) needed to delay her appointment because of diarrhea issues (R. 24, citing R. 372-374). Later in December 2021, Plaintiff resumed therapy appointments and: (1) reported she had only left home four times in two or more years,

8

but stated she had re-engaged with an old friend who was now her boyfriend; (2) expressed ongoing challenges with irritable bowel syndrome, severe anxiety, social anxiety, post-traumatic stress disorder, and obsessive compulsive tendences; and (3) appeared unkempt and moderately anxious, with partial insight and impaired judgment; but (4) her orientation was within normal limits, her affect was lively, and she was cooperative, talkative, and reported appetite and sleep within normal limits (R. 24, citing R. 390-392).

The ALJ went on to conduct a detailed review of Plaintiff's medical records from 2022, noting Plaintiff was negative for C. difficile in March 2022 and started on a new birth control that month (R. 25, citing R. 378).  In March 2022, Plaintiff also:  (1) reported a recent breakup to her therapist; (2) expressed excitement about learning a new language; (3) had an unremarkable appearance; (4) was fully oriented and cooperative, despite crying at times; (5) presented as moderately anxious and depressed, but with a lively affect; (6) demonstrated speech, thought processes, thought content, and perceptions within normal limits; and (7) denied suicidal ideation; but (8) had insight, judgment and sleep that were impaired and appeared very thin (R. 25, citing R. 395-397).  In April 2022, Plaintiff: (1) reported to her therapist she had started a new relationship with a man who lived out of state and hoped to see him soon, but indicated she would need to push herself to leave home; (2) was moderately anxious and depressed, but her affect was lively; (3) demonstrated speech, thought processes, thought content, and perceptions within normal limits; and (4) denied suicidal ideation; but (5) had insight, judgment and sleep that were impaired and appeared very thin (R. 25, citing R. 401-403).  In July 2022, Plaintiff: (1) reported to her therapist that she had pushed herself to leave home and visit the dentist; (2) was moderately anxious and depressed, but her affect was lively; and (3) denied suicidal ideation; but (4) had insight, judgment and sleep that were impaired and appeared very thin (R. 25, citing R. 404-407).

Also in July 2022, Plaintiff had a telehealth appointment with a new primary care provider. Her provider noted that: (1) Plaintiff's main concern was obtaining refills for medication for her overactive bladder; (2) Plaintiff was not interested in a psychiatry referral, and was taking Ativan sparingly for panic attack symptoms; (3) Plaintiff's mother reported Plaintiff did not leave home often because of anxiety over gastrointestinal symptoms; and (4) Plaintiff appeared comfortable, she was not acutely ill, she was well-groomed, and she had a happy affect with even, clear, speech, and made intermittent eye contact (R. 26, citing R. 368-371).

The ALJ thoroughly reviewed all these records and cited them in reaching her RFC determination. Plaintiff contends the ALJ's RFC determination is flawed because the ALJ failed to adequately: (1) account for Plaintiff's social interaction limitations; (2) evaluate the credibility of Plaintiff's subjective complaints; and (3) evaluate Plaintiff's need for time off task for unscheduled bathroom breaks. (ECF No. 9 at 12-29; *see also* ECF No. 17 at 1-6.) Plaintiff argues each of these alleged errors provides an independent basis either to reverse the ALJ's Decision or remand this matter for further proceedings. (ECF No. 9 at 29.) Defendant asks the Court to affirm the Decision on grounds that the ALJ applied proper legal standards and substantial evidence supports her findings. (ECF No. 16 at 12.)

1. **Plaintiff's Social Interaction Limitations**

Plaintiff argues the ALJ's Decision is not supported by substantial evidence because the ALJ "failed to properly evaluate Plaintiff's limitations related to social interactions and failed to accurately reflect these limitations in the RFC." (ECF No. 9 at 13; *see also* ECF No. 17 at 1-6.) Plaintiff similarly claims the ALJ "failed to build an accurate and logical bridge" between her conclusions related to Plaintiff's social interaction limitations and the evidence. (ECF No. 9 at 13.) The crux of Plaintiff's argument is that the ALJ's RFC determination is less restrictive than Dr.

10

Alford Karayusuf opined was necessary, despite the ALJ finding Dr. Karayusuf's medical opinion "persuasive." (ECF No. 9 at 13-17; *see also* ECF No. 16 at 1-6.) Plaintiff also cites to other record evidence she claims supports a more restrictive social interaction limitation. (ECF No. 9 at 17.) Plaintiff argues the ALJ's error is not harmless because it affected the hypothetical questions the ALJ asked the vocational expert and the ALJ's ultimate conclusion that Plaintiff can perform work that exists in significant numbers in the national economy. (ECF No. 9 at 18.)

Dr. Karayusuf examined Plaintiff on July 29, 2021. (R. 355- 358.) In relevant part, he opined that "[Plaintiff] would have difficulty consistently interacting with the public and would be best relating to no more than two or three co-workers in any one location, preferably working alone as much of the time as possible." (R. 357.)

The ALJ stated she was "more persuaded" by Dr. Karayusuf's medical opinion than by two other medical opinions she evaluated, both of which she found just "minimally persuasive." (R. 29.) The ALJ explained:

> The conclusions reached by Dr. Karayusuf are also overall more consistent with the longitudinal record, discussed above. For instance, he opined that the claimant would have difficulty interacting with the public and would do best with limited contact with coworkers. Such limitations are consistent with the claimant's reported anxieties about the public, but also with her ability to interact with others on a limited basis, such as in her online schooling, seeing treatment providers, visiting her grandma, and seeing her boyfriend. Again, the undersigned particularly notes that the claimant's medication is minimal, and she has not required community supports, inpatient treatment, etc. She no longer has hallucinations and takes no long-acting medications. Such factors are not consistent with marked impairment.

(R. 30.) The ALJ in turn restricted Plaintiff to occasional interaction with supervisors and coworkers, and no work with the general public. (R. 20.)

Plaintiff argues the ALJ's RFC is erroneously less restrictive than Dr. Karayusuf's medical opinion because it only limits Plaintiff to "occasional" interactions with supervisors and

11

coworkers. (ECF No. 9 at 14.) She contends the ALJ "failed to include or discuss the second part of Dr. Karayusuf's 'persuasive' opinion, that Plaintiff should be limited to interacting with 'no more than two or three co-workers in any one location' and should be 'working alone as much of the time as possible.'" (ECF No. 9 at 14, citing R. 29-30, 357.)

The Court finds the ALJ properly evaluated Plaintiff's social interaction limitations and that substantial evidence supports her findings. The ALJ stated she was "more persuaded" by Dr. Karayusuf's medical opinion than two other medical opinions in the record (R. 29), but being "more persuaded" by an opinion does not require an ALJ to adopt its proposed limitations verbatim. *Wyatt v. Kijakazi*, Civ. No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) ("The ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive …."). In her evaluation of Dr. Karayusuf's medical opinion, the ALJ noted Plaintiff's ability to interact with others on a limited basis, as evidenced by her online schooling, interactions with treatment providers, visiting her grandmother, and seeing her boyfriend (R. 30)—all of which the ALJ thoroughly documented in her Decision (*see* R. 21-25, citing *e.g.*, R. 47-48, 212-223, 390-393, 404-407, 410-415). Based on detailed citations to the record, the ALJ also found Plaintiff's medication was minimal and she did not require community support or inpatient treatment (R. 30; *see also* R. 22-25, citing *e.g.*, 271, 293-295, 302-306, 328-329, 355-359). In her RFC analysis, the ALJ further cited: (1) numerous findings that, while Plaintiff experienced anxiety, she also presented as cooperative with a lively affect (*see, e.g.*, R. 24-26, citing R. 368-371, 390-392, 395-397, 404-407); (2) a report from Plaintiff's online educator that Plaintiff demonstrated only slight problems interacting with others (R. 23, citing R. 212-223); and (3) examples of Plaintiff interacting with the public (R. 21-22, 27, citing *e.g.*, R. 47-48, 405).

The ALJ summarized her evaluation of Plaintiff's social interaction limitations as follows:

> In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that she has difficulty engaging in social activities, getting along with others, and spending time in crowds. However, the claimant has a boyfriend that comes to visit and she communicates with others online. She testified that she has only left her home three times in the past 2 years, and has made similar statements to providers. However, that is not consistent with the record, which suggests she has gone out more than that this year alone. According to the record, the claimant has recently gone to the dentist and to see her grandmother. She testified that she has gone out with her boyfriend to Walmart and PetSmart, and they've gone to the city a couple times. The claimant has said she can deal appropriately with authority, and she lives with others. (Exhibit 4E; hearing testimony) Finally, the medical evidence shows that the claimant was described as cooperative. Her teacher (in a virtual setting) observed only a few slight problems, and noted that the claimant was able to seek attention and express anger appropriately. She had no problem relating experiences, using appropriate language, maintaining relevant and appropriate conversation, taking turns in conversation, or using adequate vocabulary/grammar to express thoughts and ideas in general, everyday conversation.

(R. 27.)

Read in its entirety, the Decision belies any notion that the ALJ either failed to evaluate the record evidence related to Plaintiff's social interaction limitations or reached logically inconsistent conclusions. The ALJ clearly explained the extent to which she found Dr. Karayusuf's medical opinion supported by the record, but also cited evidence consistent with a lesser restrictive social interaction limitation. (R. 30.) An RFC assessment is reserved solely to the ALJ, 20 C.F.R. § 416.927(d), and the ALJ was not required to adopt all of Dr. Karayusuf's proposed limitations. *Wyatt*, 2023 WL 6629761, at *1.

Plaintiff's argument is essentially a disagreement with how the ALJ weighed the evidence. But to the extent Plaintiff disagrees with how the ALJ weighed the evidence, or argues the ALJ overlooked certain evidence, the Eighth Circuit has rejected this argument and explained that the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). If it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision. *Chesser v. Berryhill*, 858 F.3d 1161,1164 (8th Cir. 2017); *see also Nash v. Comm'r*, 907 F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)).

Here, the Court finds that the ALJ properly considered the relevant evidence and substantial evidence supports her RFC determination. And because the ALJ did not err by failing to include additional social interaction limitations, the hypothetical question she posed to the vocational expert was appropriate. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996) (a hypothetical question posted to a vocational expert need include only those impairments that the ALJ has found are substantially supported by the record as a whole). For these reasons, the Court recommends Plaintiff's challenge to the ALJ's determination of Plaintiff's RFC social interaction limitations be rejected.

**2.      The ALJ's Evaluation of Plaintiff's Subjective Complaints**

Plaintiff next argues "the ALJ erred by failing to adequately evaluate the credibility of the Plaintiff's subjective complaints based upon her reluctance to take prescribed medication." (ECF No. 9 at 25.) Plaintiff concedes the ALJ "was entitled to find the Plaintiff's failure to seek medical attention inconsistent with her complaints" but contends the ALJ "cherry-pick[ed]evidence regarding the Plaintiff's preference for minimal prescription medication, without considering the many side effects she experienced." (*Id.* at 26.) Plaintiff cites evidence regarding her experience with medication side effects and argues "it [was] reasonable to consider that [her] reluctance regarding new medications has perhaps been to avoid the anxiety and frequent restroom visits that

14

have both resulted in RFC limitations." (*Id.* at 27.) Plaintiff contends the ALJ's failure to adequately evaluate the credibility of her complaints was not harmless because it affected her RFC and, ultimately, the ALJ's determination of the jobs she is able perform. (*Id.* at 27.)

Congress expressly prohibited granting disability benefits based entirely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). When a claimant has produced objective evidence of an impairment that could reasonably produce her alleged symptoms, the ALJ evaluates the intensity and persistence of the symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *8. The ALJ then must evaluate whether the claimant's subjective statements about her symptoms are consistent with: (1) the objective medical evidence; and (2) the other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3); SSR 16-3p. Under SSR 16-3p, the ALJ may consider factors such as: the objective medical evidence; consistency of the medical evidence with the claimant's allegations; medical source statements; the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; aggravating or precipitating factors; and medication, treatment, and other measures to relieve pain. SSR 16-3p.

After considering Plaintiff's subjective complaints, the ALJ concluded "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 24.) The ALJ cited abundant objective medical and other evidence, including Plaintiff's resistance to treatment and medication to support

15

her conclusion. (*See* R. 21-26, citing, *e.g.*, R. 271, 293-295, 299-301, 328-329, 355-359, 368-371.) She also explained:

> Multiple providers have commented on the claimant's resistance to treatment. Again, she utilizes Ativan as needed, prescribed by a primary care provider. However, she refuses to use a longer acting anti-anxiety agent and has declined referrals to psychiatry, despite having been advised that her IBS may be exacerbated by her mental health conditions. She has also had little treatment for IBS since 2020. To the extent the claimant has treated her GI impairments, the undersigned notes that she has seen improvement with treatment of C. difficile via antibiotics. The claimant has also been willing to take medications such as birth control. The claimant's suboptimal treatment of her mental impairments comes despite repeated explanations of the need for treatment and no identified mental barriers to compliance. Ultimately, the claimant's failure to pursue all available treatment options further suggests the claimant's symptoms have not been as troublesome as alleged, and contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date.

(R. 27.) Plaintiff argues the ALJ overlooked certain evidence—including record evidence that plaintiff eventually ceased taking birth control due to its perceived side effects—and speculates the ALJ did not consider Plaintiff's underlying rationale for her resistance to taking certain medications (ECF No. 9 at 27).

Plaintiff's argument is speculative and ignores the ALJ's rationale, which noted that Plaintiff's doctors have advised the GI symptoms she seeks to avoid may be exacerbated by her untreated mental health conditions, and that the limited treatment Plaintiff was willing to receive for her IBS demonstrated improvement. Moreover, the ALJ's analysis was not limited to Plaintiff's reluctance to take medication. The ALJ also noted Plaintiff's failure to seek non-pharmacological treatment, including declining a psychiatry referral (R. 26, citing R. 369) and intermittent psychotherapy (R. 24, citing R. 328, 355, 391). "While not dispositive, a failure to

16

seek treatment may indicate the relative seriousness of a medical problem." *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014).

Plaintiff's argument boils down to a complaint that the ALJ assigned too much weight to her failure to seek treatment. But as previously noted, the Court cannot overturn the ALJ's Decision based on a disagreement with how the ALJ weighed the evidence, or a concern that the ALJ overlooked certain evidence, when there is substantial evidence to support it. *Nash*, 907 F.3d at 1089. And because the ALJ did not err in her analysis as to Plaintiff's reluctance to take prescribed medication, the hypothetical question she posed to the vocational expert based on the resulting RFC determination was appropriate. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996). Because the ALJ appropriately evaluated Plaintiff's subjective complaints and substantial evidence supports her findings, the Court recommends that Plaintiff's challenge on this ground be denied.

### 3. The ALJ's Evaluation of Plaintiff's Irritable Bowel Syndrome/Enteritis

Finally, Plaintiff argues the ALJ's RFC determination is flawed because she failed to address Plaintiff's need for time off-task for unscheduled bathroom breaks because of her irritable bowel syndrome/enteritis. (ECF No. 9 at 21- 24.) Plaintiff testified she uses the restroom 3 to 7 times during a flare-up, which happens multiple times per week. (R. 50-51.) She cites her own testimony and other evidence she claims supports her need for multiple bathroom breaks. (ECF No. 9 at 21-22.) Plaintiff concedes her RFC requires "she must have access to restroom facilities" (*id.* at 21), but she argues "physical proximity to a restroom is nothing without the ability to take an unscheduled and off-task break from work more than three times per day to use the restroom" (*id.* at 23). Plaintiff argues the ALJ should have addressed the time she needs for multiple bathroom breaks per day in her RFC and included that limitation in the hypothetical questions

17

posed to the vocational expert. (*Id.* at 22.) Plaintiff contends the error is not harmless because she may not actually be capable of performing the jobs the vocational expert proposed in response to the allegedly deficient RFC. (*Id.*)

At step two of the sequential analysis, the ALJ concluded Plaintiff suffers from severe irritable bowel syndrome/enteritis. (R. 19.) At step four, the ALJ included in Plaintiff's RFC a limitation that "[s]he must have access to restroom facilities, so for example, cannot perform outdoor work." The ALJ explained her reasoning behind the limitation:

> The claimant has reported intermittent flare-ups of IBS. To the extent the claimant experiences symptoms associated with IBS, her complaint appears to be that of intermittent frequency and/or urgency. The medical record does not suggest disabling pain symptoms, nor does it demonstrate that she has objective physical deficits that would call for exertional or other physical restrictions. Her frequency/urgency symptoms are reasonably addressed in the residual functional capacity via access to restroom facilities.

(R. 26.) The ALJ cited evidence related to Plaintiff's irritable bowel syndrome/enteritis including: (1) Plaintiff's testimony that she had fluctuating bowel movements anywhere from 3 to 7 times per day, multiple times a week during a flare-up (Tr. 21, citing R. 50-51); (2) a medical note that Plaintiff needed to delay her appointment because of diarrhea issues and used the bathroom once during her appointment (but without diarrhea )(R. 24, citing R. 372-374); (3) Plaintiff was resistant to treatment and received limited treatment for her condition since 2020 (R. 22, 27, citing *e.g.*, R. 295); and (4) to extent Plaintiff has had treatment, she has seen improvements with treatment of C. difficile via antibiotics (R.22-26, citing *e.g.*, R. 293, 299, 378).

The record therefore reflects that the ALJ did consider the frequency and urgency of Plaintiff's restroom requirements. Plaintiff's argument is largely based on her own testimony that she requires a restroom break multiple times each day. (*See* ECF No. 9 at 22-24.) But the ALJ considered Plaintiff's testimony, among other evidence, and concluded the limitation included in

Plaintiff's RFC was sufficient to address the degree of Plaintiff's impairment without adding the time off-task restriction Plaintiff advocates. (R. 27.) The ALJ appropriately considered Plaintiff's subjective complaints in light of the other evidence in the record. Because the ALJ properly evaluated Plaintiff's irritable bowel/enteritis impairment in her RFC and substantial evidence supports her finding, the Court must affirm it, regardless of whether there is substantial evidence to support an alternative conclusion. *Nash*, 907 F.3d at 1089. And because the ALJ did not err by failing to include additional limitations in Plaintiff's RFC, the hypothetical question she posed to the vocational expert was appropriate. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996). For these reasons, the Court recommends Plaintiff's challenge to the ALJ's RFC limitations related to her irritable bowel syndrome/enteritis be rejected.

## REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's Request for Relief (ECF No. [9]) be **DENIED**;

2. Defendant's Request for Relief (ECF No. [16]) be **GRANTED**;

3. The Decision be **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) be **DISMISSED WITH PREJUDICE**.

Dated: June 10, 2024                        *s/ Dulce J. Foster*
                                            DULCE J. FOSTER
                                            United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).